[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 05-13451

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 2, 2006
THOMAS K. KAHN
CLERK

BIA No. A79-534-515

MUHONG WU,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

Petition for Review of a Decision of the
Board of Immigration Appeals

**(August 2, 2006)**

Before EDMONDSON, Chief Judge, BIRCH and ALARCÓN,[*] Circuit Judges.

PER CURIAM:

Petitioner Muhong Wu petitions for review of the Board of Immigration

Appeals' ("BIA") decision, affirming without opinion the immigration judge's

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

("IJ") order. The order denied Wu's application for asylum and for withholding of removal under the Immigration and Nationality Act and for relief under the United Nations Convention Against Torture ("CAT"). No reversible error has been shown; we deny Wu's petition.

I. Background

Wu, a Chinese native and citizen, entered the United States as a non-immigrant visitor in November 2000. She was permitted to remain in the United States for up to six months. After nine months in the United States, Wu applied for asylum, withholding of removal, and CAT relief. In her application, Wu claimed she suffered persecution for her membership in Falun Gong, a movement banned by the Chinese government in 1999. Wu also claimed she harbored a well-founded fear of future persecution if she returned to China.

Wu contends she began practicing Falun Gong in March 1998. In September 1999, Wu was arrested by Chinese police and detained for six days. During her detention, Wu says she was interrogated three times. During her first interrogation, Wu claims government officers pulled her hair, knocked her head on a table causing her nose to bleed, and kicked her when she would not kneel. She

apparently suffered no physical abuse during the two later interrogations; and she alleges no further physical harm since her detention. During detention, Wu also was made to write a "letter of repentance," sign an agreement that she would cease practicing Falun Gong, and pay a fine before her release.

After Wu was released from detention, she returned to her home in Tai Shan to find she had been fired from her job. At one point during her testimony before the IJ, Wu claimed she was unable to find other employment. But she also testified that she was a manager at a food manufacturing company when she immigrated to the United States. Wu later recanted that testimony. Wu also testified before the IJ that she worked as an assistant in a relative's store for the roughly 13 months between her detention and immigration to the United States.

After her detention, Wu claims her travel was restricted; she was not permitted to travel outside her home province without police permission. Wu also was required to report weekly to the police. But Wu testified that she was never denied permission to travel and that, on at least two occasions, she traveled to other Chinese provinces.

Wu also testified that -- after her detention -- she continued to practice Falun Gong for 13 months before her immigration to the United States. Despite

continuing to practice Falun Gong, Wu suffered no further government intimidation or harassment related to her continued practice.

At the conclusion of Wu's testimony before the IJ -- and after the IJ considered Wu's "demeanor while testifying . . . [and] the rationality, internal consistency, and inherent persuasiveness of her testimony" -- the IJ concluded that he had "no faith or confidence in anything [Wu] told me" and that Wu was "totally and utterly lacking in credibility." The IJ concluded that Wu lacked credibility based, in part, on these things: (1) Wu lied on her passport application; (2) Wu provided false information to the United States Consulate to obtain her visa; (3) Wu lied when she stated she was married; (4) Wu offered inconsistent testimony about her employment status during the months before she left China; (5) Wu offered inconsistent testimony about her travel around the United States; and (6) Wu changed her story at least twice during her testimony and plainly denied making earlier statements -- that she, in fact, had made -- before the court. Additional evidence indicated that Wu could not explain the central tenets of Falun Gong.[1]

---

[1]The asylum officer's assessment states: "Applicant's lack of knowledge on what Falun Gong is all about casts into doubt whether she is a real Falun Gong practitioner and whether any incidents described by her actually happened."

The IJ also concluded -- after assuming Wu's testimony to be true -- that Wu did not suffer sufficient past persecution or reasonably fear future persecution to merit asylum or withholding or removal. The BIA affirmed the IJ's decision without opinion.

## II. STANDARD OF REVIEW

The IJ's opinion is the final agency determination subject to our review. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the IJ's factual determinations under the substantial evidence test and must affirm if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1283-84 (internal quotation omitted). "Under this highly deferential standard of review, the IJ's decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005) (citations omitted). We review de novo the IJ's legal determinations. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004).

III. DISCUSSION

Wu asserts she suffered persecution sufficient to compel asylum and withholding of removal given these events: (1) the Chinese government detained her for six days during which time she was interrogated three times and suffered some maltreatment; (2) she lost her job; (3) she had to request permission to travel; and (4) she was made to report periodically to police officials. Wu further asserts that her continued active participation in Falun Gong gives her a well-founded fear of future persecution should she be made to return to China because the Chinese government continues to persecute Falun Gong members.[2] After review, we conclude that the evidence does not compel a conclusion that Wu was entitled to asylum, withholding of removal, or CAT relief.

To qualify for asylum, Wu must be a "refugee." A "refugee" is a person:

who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race,

---

[2]Wu also argues that she has met her burden for a stay of removal because she has a likelihood of success on her asylum and withholding of removal claims; and, Wu claims, the likelihood of harm if she is removed to China is great. We previously denied Wu's motion to stay deportation, and we deny her request for a stay of removal.

6

religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). "The asylum applicant carries the burden of proving statutory 'refugee' status." D-Muhumed, 388 F.3d at 818. And the "denial of asylum may be reversed only if the evidence presented by the applicant is so powerful that a reasonable factfinder would have to conclude that the requisite fear of persecution exists." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323-24 (11th Cir. 2001).

## A. Wu's Credibility

An asylum applicant must establish her eligibility for asylum "by offering credible, direct, and specific evidence in the record." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (internal marks and citation omitted). Wu's main evidence in support of her petition was her own testimony. The IJ determined that Wu's testimony was not credible because of substantial inconsistencies and because the IJ concluded -- based on observing Wu's demeanor during testimony and listening to her story first-hand -- that Wu was

7

"willing to say anything and put down anything to get what she wants." We review the IJ's credibility determinations under the substantial evidence test. Id.

When the IJ enumerates inconsistencies that are supported in the record, we may not substitute our judgment for the IJ's on the credibility findings. D-Muhumed, 388 F.3d at 819. "[A]n adverse credibility determination alone may be sufficient to support the denial of an asylum application" when nothing else evidences persecution. Forgue, 401 F.3d at 1287. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Id.

The IJ set out specific, cogent reasons for his credibility determination. Perhaps most damaging to Wu's credibility -- and among the reasons noted by the IJ in deeming Wu not credible -- were those instances when she (1) twice made a statement during her testimony only to deny making that same statement when questioned later;[3] (2) gave inconsistent answers about her employment in China;

---

[3]The IJ summarized one of these incidents this way:
> Then we have what [sic] I was questioning her about her passport and I asked her, why does your passport indicate that you are a manager, and she says, because at the time I applied for my passport I was a manager. And I said, oh, what were you a manager of? I was a manager of a food manufacturing company. And I asked her specifically, at the time you applied for and got your passport were you a manager of a food manufacturing company? And she said, yes. Then when being questioned later by the government attorney she indicated that she was not a manager at the time

8

and (3) gave testimony about her travels in the United States that conflicted with testimony from Jin Chung Pang, a friend of Wu's with whom Wu lived during portions of her stay in the United States. Wu has attempted to explain these inconsistencies as the product of simple misunderstandings. But even Wu's explanations would not compel a reasonable factfinder to reverse the IJ's credibility determination. On this record, substantial evidence supports the IJ's conclusion that Wu was not credible.

We have written that, if an applicant "produces other evidence of persecution, whatever form it may take, the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." Id. Wu did present other evidence of persecution beyond her testimony: the receipt she received after paying her fine upon release from "Administrative Detention." The record indicates that the IJ considered this evidence -- and did not rely solely on his adverse credibility determination -- in denying Wu's petition.

---

she applied for her passport, that she only put that down because the company that was assisting her with her passport told her to do that. And at that point I interrupted and I said, wait a minute. You told me earlier that you were, in fact, a manager and that you were a manager of a food manufacturing company. And she flat out said she didn't say that.

9

The receipt shows only that Wu paid a fine to be released from administrative detention. Although this evidence may prevent this case from being decided solely on the adverse credibility determination, Wu's credibility is still an important factor in assessing the evidence as a whole.

B. Past Persecution & Reasonable Fear of Future Persecution

To establish asylum eligibility, Wu must show (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006) (citing 8 C.F.R. § 208.13(a), (b)). The IJ concluded that Wu was not entitled to asylum or withholding of removal because she did not demonstrate past persecution or a reasonable fear of future persecution. We agree.

We have written that "[n]ot all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000). Persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (quotations and internal marks

10

omitted).  In <u>Zheng v. U.S. Att'y Gen.</u>, 451 F.3d 1287 (11th Cir. 2006), we affirmed the denial of asylum and withholding of removal when the petitioner, a Falun Gong practitioner who came to the United States under circumstances similar to Wu, was detained for five days by Chinese authorities and made to watch reeducation videos and stand in the sun before signing a pledge not to practice Falun Gong.  Like Wu, the petitioner in <u>Zheng</u> was fired from his job as a result of his Falun Gong practice.  <u>Id.</u> at 1289.  He was also subject to surveillance and periodic searches by local officials.  <u>Id.</u>  Although the IJ deemed the petitioner in <u>Zheng</u> to be credible, none of these things compelled us to conclude that the petitioner suffered past persecution.  <u>Id.</u> at 1290-91.

Wu alleged similar treatment in her asylum petition.  Unlike in <u>Zheng</u>, however, Wu contends that she suffered some physical harm during her detention.  We are not persuaded that this single incident of detention -- even with some minor physical harm -- amounts to persecution sufficient to compel asylum.  This position is strengthened some by Wu's lack of credibility.  Other than her testimony, Wu presented no evidence to substantiate her claim that she suffered physical harm.  Although the receipt from her fine is evidence that Wu was detained, it is no evidence that she suffered physical harm during her detention.  Wu has not carried her burden.

11

Substantial evidence also supports the IJ's determination that Wu failed to establish a well-founded fear of future persecution. We have explained:

> If an alien does not establish past persecution, he bears the burden of showing a well-founded fear of persecution by showing these things: (1) he fears persecution based on his membership in a particular social group, political opinion, or other statutorily listed factor; (2) there is a reasonable possibility that he will suffer persecution if removed to his native country; and (3) he is unable or unwilling to return to his native country because he fears persecution.

Id. at 1291 (citing 8 C.F.R. § 208.13(b)(2)(i)). A "well-founded fear" must be both subjectively genuine and objectively reasonable. Ruiz, 440 F.3d at 1257.

That Wu avoided persecution for 13 months in China while continuing to practice Falun Gong supports the IJ's determination that Wu did not have a well-founded fear of future persecution. See Zheng, 451 F.3d at 1292 n.3 (concluding that successfully avoiding persecution for extended period "is evidence indicating there is not a reasonable possibility [petitioner] will suffer future persecution upon his return to China"). That no evidence suggests Wu was a Falun Gong leader also supports the IJ's conclusion. See id. at 1291-92 (citing State Department's 2002 Country Report on Human Rights Practices for China in noting that "Falun Gong followers were generally released from detention and . . . harshest punishments were reserved for core leaders of the movement"). On this record,

Wu has not carried her burden to show a reasonable possibility of future persecution upon her return to China.

C. Withholding of Removal & CAT Relief

Because we conclude that Wu has not satisfied the less stringent standard for asylum, she is also not entitled to withholding of removal or CAT relief. Id. at 1292 (citing Forgue, 401 F.3d at 1288 n.4).

IV. CONCLUSION

"Involvement with Falun Gong in China by itself does not entitle a person to asylum in the United States." Id. The IJ's decision is supported by substantial evidence. We therefore deny Wu's petition.

PETITION DENIED.

13